

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-287
Re: Amount of assessment commissions to be paid by State in Matagorda and Hidalgo Counties during stated periods.

You direct our attention to Senate Bill No. 32, Chapter 61, page 164, First Called Session, 43rd Legislature, granting to the City of Palacios and the village of College Port eight-ninths of the next amount of the state ad valorem taxes collected on property in Commissioners' Precinct No. 3 of Matagorda County for a period of thirty years, and House Bill No. 114, Chapter 402, page 1596, First Called Session, 44th Legislature, granting Precincts Nos. 1, 2 and 4 in Matagorda County the net amount of State ad valorem taxes collected in said precincts for a certain period of time, and Senate Bill No. 281, Chapter 162, page 343, Regular Session, 38th Legislature, remitting to the inhabitants of Hidalgo County all State ad valorem taxes levied for State purposes in that county for a period of twenty-five years, and request our opinion as to whether the State should bear one-half the fees for assessing the properties in the areas affected by the above acts during the respective periods of such grants, or whether the State's share of such assessment costs should be reduced in proportion to the amounts of such grants.

The first section of said Senate Bill No. 32 reads as follows:

"Section 1. That for a period of thirty (30) years, commencing with the fiscal year beginning September 1, 1933, there be and are hereby donated and granted by the State of Texas to a commission, hereinafter created, in trust for the City of Palacios and the Village of College-port, both situated in Commissioner's Precinct Number 3 of Matagorda County, Texas, eight-ninths (8/9) of the net

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

amount of the State ad valorem taxes collected on all property, both real and person, in said Commissioner's Precinct Number 3 of Matagorda County, Texas, which shall be ascertained and apportioned as now provided by law.

It is further provided in Section 3 of said Senate Bill No. 32 that at the end of each month the tax collector of Matagorda County "shall pay over to the City Treasurer of the City of Palacios eight-ninths of all moneys collected by him during said month under the provisions of this Act, except such amounts as are allowed by law for assessing and collecting same, and shall forward a duplicate copy of the receipts given to him by the Treasurer of the City of Palacios, Texas, for such moneys to the Comptroller. The said collector shall remit to the State Treasury one-ninth of all such taxes collected by him from month to month." We deem it unnecessary for present purposes to set out the remaining provisions of said enactment.

It is specially noted that said Act grants only eight-ninths of the net amount of the State ad valorem taxes collected in said precinct No. 3 of Matagorda County. In the case of Overshiner vs. Palmer, 135 S. W. 387, the court said that;"'Net' means free from charges or deductions; obtained after deducting all expenses." This statement of the meaning of the word "net" was approved in the case of Hope vs. Shirley, 211 S. W. 246. Also it is particularly noticed that in Section 3, it is expressly provided that the amounts allowed by law for assessing and collecting said moneys shall be deducted from the sums paid over monthly to the City Treasurer of the City of Palacios. It is thus quite clear that the legislature intended that the cost of assessment incurred in connection with the collection of the money granted should be paid out of such grant. The half of the assessment fees ordinarily paid by the State under Article 2937, Revised Civil Statutes, should be paid as follows with respect to the area affected by the above grant: The pension and school funds their usual share; one-ninth of the remainder by the State and other eight-ninths of the remainder should be deducted from the granted sum before the same is paid over.

Section 1 of said House Bill No. 114, by the 44th Legislature, reads as follows:

"Section 1. That for the remainder of the period of time for which the inhabitants of and property in Wharton County and that portion of Matagorda County embraced in Commissioners Precincts Numbers 1, 2, and 4 were released from the payment of State ad valorem taxes levied for general revenue purposes by Chapter 48, Acts Second Called Session, Thirty-eighth Legislature, there be and hereby are donated and granted by the State of Texas to Wharton County comprising one district and that portion of Mata-

gorda County embraced in Commissioners Precincts Numbers 1, 2, and 4, comprising another district, the net amount of all State ad valorem taxes levied and collected for State general purposes on all property, both real and personal, including the rolling stock belonging to railroad companies which shall be ascertained and apportioned as now provided by law, in said Wharton County and that part of Matagorda County embraced in Commissioners Precincts Numbers 1, 2, and 4."

Section 3 of said House Bill No. 114 contains provisions like those contained in Section 3 of said Senate Bill No. 32 by the First Called Session, 43rd Legislature.

It is thus noted that said House Bill No. 114 by the 44th Legislature is practically identical in its terms with said Senate Bill No. 32 by the 43rd Legislature. The same principles would therefore govern and after the pension and school funds have borne their pro rata share of such assessment costs the remainder of the part ordinarily paid by the State should be deducted from and paid out of the sum granted by said House Bill No. 114.

Senate Bill No. 281, Chapter 162, Regular Session, 38th Legislature, provided in part as follows:

"Section 1. That because of great public calamities occuring in the county of Hidalgo, the inhabitants of and property in said county, in accordance with Section 10 of Article 8 of the State Constitution, shall be, and are hereby, released for a period of twenty-five (25) years as hereinafter provided, from the payment of taxes levied for State purposes in said county as follows:

"1. All of State ad valorem taxes levied for State purposes against the inhabitants and property in the county of Hidalgo, including the rolling stock belonging to railroad companies which shall be ascertained and apportioned as provided by law.

". . .

"Section 3. The tax assessor of Hidalgo County shall assess for taxation the property and persons, firms, companies and associations of persons in said county in the usual manner as required by law, and the tax collector of said county shall, or shall not, collect the said state taxes, as he may be ordered and directed to do by the Comptroller of Public Accounts as hereinafter provided."

The Act also provided that such relief should be conditioned upon the voters of Hidalgo County voting an issue of bonds equal in amount to the taxes released. It is our understanding that the bonds were voted.

In the case of Sheppard v. Hidalgo Co., 83 S. W. (2d) 649, the Supreme Court, in an opinion by Judge German, Commissioner, held that this Act was void. However, House Bill No. 101, Chapter 401, page 1594, First and Second Called Sessions, 44th Legislature, apparently removed the questions resulting in such holding and on motion for rehearing the Supreme Court, calling attention to said House Bill No. 101, in 90 S. W. (2d) 811, withdrew its said former opinion. It is our understanding that you desire our opinion concerning the matter of assessment costs during the period prior to the effective date of said House Bill No. 101 only.

In an opinion dated April 14, 1932, found in Volume 333 at page 392 of the Letter Opinions of the Attorney General, Maurice Cheek, then Assistant Attorney General, advised you that the State was not due to pay assessor's commissions upon the taxes thus remitted to the inhabitants of and property in Hidalgo County under the terms of said Senate Bill No. 281 by the 38th Legislature. We understand that your department acted upon and followed that opinion and we are not disposed to depart from the same. Article 3938, Revised Civil Statutes, provides that: "The Comptroller, on receipt of the rolls, shall give the assessor an order on the collector of his county for the amount due him by the State for assessing the State taxes, to be paid out of the first money collected for that year." Said Senate Bill No. 281 was enacted in the light of that statute. It is noted that said Senate Bill No. 281 did not provide that the State ad valorem taxes levied for State purposes should be collected and then delivered to Hidalgo County but released such taxes entirely and removed the necessity of collecting the same. Hence there would be no fund such as that contemplated by said Article 3938 out of which the assessment fees ordinarily paid by the State could be drawn, unless we should say that all of such commissions should be paid out of the school fund or pension fund. Since both of the last mentioned funds are expressly provided by Constitution (Art. 8, Sec. 9 and Art. 3, Sec. 51) we do not believe that it was contemplated that the share of the assessment costs ordinarily paid out of the taxes collected for the State general fund should be met by withdrawals from the school and pension funds. Our answer to your last question, therefore, is that the State was not due to pay any of the assessment

Hon. Geo. H. Sheppard, Page 3

fees accruing in Hidalgo County during the period that Senate Bill No. 281 was in force except the pro rata amounts due by the pension and school funds.

Very truly yours

ATTORNEY GENERAL OF TEXAS

BY                    /s/
                  Glenn R. Lewis
                     Assistant

GRL:N

APPROVED NOV 7, 1939

/s/ W. F. Moore
FIRST ASSISTANT
ATTORNEY GENERAL